IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

                                  FILED

        v.                               :      CRIMINAL NO. 83-314-1
                                  :

GEORGE MARTORANO                  .     . . Clerk
                                  b          Clerk

DEFENDANT'S
MOTION TO CORRECT ILLEGAL SENTENCE AND/OR FOR
RECONSIDERATION AND/OR APPROPRIATE RELIEF
AND INCORPORATED MEMORANDUM OF LAW

The Defendant, GEORGE MARTORANO, by and through undersigned

counsel and pursuant to former Rule 35(a) of the Federal Rules of Criminal

Procedure, respectfully files this "Motion to Correct Illegal Sentence And/Or For

Reconsideration And/Or Appropriate Relief" which is based primarily upon the

recent decision of the Third Circuit in *United States v. Ward*, 2010 WL 4230195

(3d Cir. 2010) (unpublished) which persuasively holds that a "general sentence"

like that imposed upon Mr. Martorano is illegal. Indeed, under *Ward*, a "general

sentence" on multiple counts is illegal *even where the sentence as to one of those

counts, as here, is within the statutory maximum.* (An unopposed motion to have

*Ward* become a published decision is presently pending in the Third Circuit.)

In addition, in accordance with this Honorable Court's guidelines, the

Defendant, by and through undersigned counsel, respectfully requests oral

*l*

argument on this Motion, which Motion, is not only substantive but also dispositive. Undersigned and out-of-town counsel, Roy Black, Esq. and Marcia Silvers, Esq. of the Florida Bar[1], along with local counsel, Theodore Simon, Esq., look forward to the opportunity of presenting this case to the Court. Counsel believes the instant pleading, despite the lengthy time period which has elapsed since Mr. Martorano's original plea and sentencing and despite the proceedings that have occurred since Mr. Martorano's sentencing and re-sentencing, presents the Court with matters that are new, different and that have not been expressly determined and, therefore, are substantial issues that imperil the existing sentence and compel a determination that Mr. Martorano now labors under an unlawful sentence. This unlawful sentence requires Mr. Martorano to remain in custody for the rest of his natural life despite compelling authority from the Supreme Court and recently from the Third Circuit in *Ward, supra,* that requires a vacation of the sentence and a re-sentencing.[2]

---

[1] Motions for Pro Hac Vice admission for Mr. Roy Black, Esq. and Ms. Marcia Silvers, Esq. are pending.

[2] Respectfully, with oral argument, counsel would be in a position to better present the unique, compelling arguments set forth herein and would be in a position to answer the questions of this Court as to why this case is not recycled, but rather, requires a re-sentencing, especially after the recent pronouncement from the Third Circuit in *Ward*. Only oral argument will provide the full and necessary opportunity for George Martorano and counsel to be heard comprehensively, to demonstrate why *Ward* itself dictates a reversal, and to further orally explain, that *Ward* and the "general sentence" infirmity must be distinguished and separated from the double jeopardy argument, which while valid, is substantially different

## A. Overview.

This motion involves two arguments to be considered by this Court both of which mandate that Mr. Martorano be resentenced. After a section summarizing the facts relevant to these two issues, a detailed discussion will follow of the reasons that these issues are meritorious and require that Mr. Martorano's illegal sentence be vacated.

---

both substantively and procedurally than the *Ward* argument.

Certainly, a full oral argument will assure that "process" has been properly afforded in a case that is uniquely different and unlikely to reoccur again. This is a case predating the Sentencing Reform Act involving a non-guideline sentence and a defendant with no prior record who received a sentence of life with no parole for drug offenses and is now believed to be the longest serving first-time offender for a nonviolent offense. As we will explain in detail, a recent Third Circuit case establishes that this sentence is unlawful.

**B. Facts Relevant To The Issues Herein.**

On June 4, 1984, Mr. Martorano, a first offender, accepted responsibility and pled guilty to all the counts of the Indictment in which he was charged in this case. These counts were as follows:  Conspiracy to distribute heroin in violation of 21 U.S.C. § 846 (Count 1); conspiracy to distribute and possess with intent to distribute cocaine, methaqualone and marijuana in violation of 21 U.S.C. § 846 (Count 2); possession of heroin in violation of 21 U.S.C. § 841(a)(1) (Count 3); attempted possession with intent to distribute methaqualone in violation of 21 U.S.C. § 846 (Counts 4, 6, 9 and 10); distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 11); possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (Counts 13 and 14); possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) (Counts 15, 16, 17 and 18); importation of marijuana in violation of 21 U.S.C. § 952(a) (Counts 19, 20 and 21); unlawful use of a communication facility in violation of 21 U.S.C. § 843(b) (Count 24); and conducting a criminal enterprise in violation of 21 U.S.C. § 848 (Count 30).  A copy of the Indictment is attached hereto as Exhibit 1.  Thus, Mr. Martorano was convicted for both conspiracy to distribute drugs in violation of

21 U.S.C. § 846 (Counts 1 and 2) and supervising a continuing criminal enterprise in violation of 21 U.S.C. § 848 based on the same drug distribution enterprise. (Count 30).[1]

On September 20, 1984, Mr. Martorano was sentenced to a general undivided sentence of life imprisonment without parole. The Court did not state the penalty assessed as to each individual count. *See* Judgment and Commitment Order attached hereto as Exhibit 2.

Following a remand from the United States Court of Appeals for the Third Circuit, the district court, on April 27, 1988, reimposed the same general sentence of life imprisonment without parole. *See* Judgment and Commitment Order attached hereto as Exhibit 3. On August 2, 1988, the district court amended its April 27, 1988 Judgment and Commitment Order to include several convictions that were inadvertently omitted from that Order. *See* Order of August 2, 1988 attached hereto as Exhibit 4.

In 2007, Mr. Martorano, through former counsel, filed a motion to correct illegal sentence pursuant to former Rule 35(a) of the Federal Rules of Criminal

---

[1]   The time period of the Section 846 conspiracies charged in Counts 1 and 2 overlaps with that of the Section 848 continuing criminal enterprise offense charged in Count 30. The time period covered in the Indictment was from January 1981 until the date of the Indictment, September 19, 1983.

Procedure in which he asserted that his sentence was illegal. On October 19, 2007, this Court denied the motion.

On February 6, 2009, Mr. Martorano filed a *pro se* motion to correct illegal sentence pursuant to former Rule 35(a) of the Federal Rules of Criminal Procedure. On June 5, 2009, the government filed its response thereto. On June 6, 2009, this Court denied the *pro se* motion. However, this Court's June 6, 2009 Order does not provide that it was mailed to Mr. Martorano and Mr. Martorano never received a copy of it. On November 15, 2010, Mr. Martorano first learned about that Order when his counsel spoke to this Court's deputy clerk who stated that it did not appear that Mr. Martorano was notified of this Court's June 6, 2009 Order. Indeed, because Mr. Martorano was not notified of that Order, on June 15, 2009, Mr. Martorano filed a Reply to the government's response to his *pro se* motion to correct illegal sentence not knowing that his motion had already been denied. Because this Court did not notify Mr. Martorano of its June 6, 2009 Order denying his motion to correct illegal sentence, Mr. Martorano was denied an opportunity to request reconsideration of the motion and was denied his right to appeal from the Order.

## C.    The Court Imposed An Illegal General Sentence.

As previously explained, the Court in this case imposed a general sentence of life imprisonment with no parole on all counts instead of specifying individual sentences for each offense. Significantly, the Third Circuit recently held that this form of sentence, known as a "general sentence," is illegal. *United States v. Ward*, 2010 WL 4230795 (3d Cir. 2010)(unpublished).[2] The Third Circuit reasoned that "as a result of the general nature of the sentence, neither we nor *Ward* can determine whether it was legal as to particular counts." *Ward*, 2010 WL 4230795 *5. Referring to the district court's imposition of a general sentence of 25 years on multiple counts, the Third Circuit further explained, "We do not know whether the Court intended to impose a 25 year sentence on each count to run concurrently which would clearly be illegal considering the statutory maximums on certain counts - or whether the Court had some other sentence in mind, and accordingly ... we will remand for resentencing. *Id*. Other courts have also held that such a "general sentence" is illegal. *United States v. Moriarty*, 429 F.3d 1012, 1025 (11th Cir. 2005); *United States v. Woodard*, 938 F.2d 1255, 1256-58 (11th Cir. 1991)(*per*

---

[2]    As previously explained, an unopposed motion to have *Ward* become a published decision is presently pending in the Third Circuit.

*curium*); *United States v. Scott*, 664 F.2d 264 (11th Cir. 1981); *Benson v. United States*, 332 F.2d 288 (5th Cir. 1964).[3]

General sentences in multi-count cases have long been disapproved in the Third Circuit. *See United States v. Corson*, 449 F.2d 544, 551 (3d Cir. 1971)(*en banc*). In *United States v. Rose*, 215 F.2d 617, 630 (3d Cir. 1954), referring to the imposition of "a 'lump' sentence" on multiple counts, the Third Circuit wrote, "[W]e are strongly of the opinion that it is highly desirable that the trial judge in imposing sentence on an indictment containing more than one count deals separately with each count."

Adhering to the formal requirement of count-by-count sentences helps ensure that the sentence is legal as to every count and that all statutory requirements applicable to the sentencing are satisfied. *See Ward*, 2010 WL 4230795 *5. For example, in this case, the sentence of life imprisonment without parole exceeds the maximum allowable sentence on 18 of the 19 counts. During the time period of the Indictment herein, the statutory maximum for the offenses

---

[3]    Compare *United States v. Corson*, 449 F.2d 544 (3d Cir. 1971)(*en banc*) (where so intended by Congress, as under "pyramided" offenses in bank robbery statute, multiple counts of conviction may support a single, "merged" sentence); *Untied States v. Xavier*, 2 F.3d 1281, 1291-92 (3d Cir. 1993)(where Congress intended to allow multiple convictions under different statutes constituting the "same offense," court should "impose a general sentence ... for a term not exceeding the maximum permissible sentence on that count which carries the greatest maximum sentence." (citation omitted).

charged in Counts 1 to 3, 11, 13, 14, 16 and 18 was 15 years imprisonment. The statutory maximum for the offenses charged in Counts 4, 6, 9 and 10 (possession with intent to distribute methaqualone) was five years imprisonment. The statutory maximum for the offenses charged in Counts 15, 17 and 19 to 21 (marijuana offenses involving 1000 pounds or less) was also five years imprisonment. Count 24, which charged the unlawful use of a communication facility in violation of 21 U.S.C. § 843(b), had a four-year maximum. The "general sentence" imposed on Mr. Martorano was therefore illegal.

The required remedy is to vacate Mr. Martorano's general sentence and resentence him anew with a specific sentence on each count after consideration of all of the pertinent sentencing factors. *Ward*, 2010 WL 4230795 *5 (vacating illegal "general sentence" and directing the district court, on remand, to specify the sentence on each count to which the defendant pled); *Jones v. United States*, 224 F.3d 1251, 1259-60 (11th Cir. 2000)(holding that the proper remedy where a "general sentence" has been imposed is to vacate the sentence for resentencing on each count irrespective of the intention of the sentencing judge when imposing that "general sentence").

Former Rule 35(a) is the proper legal vehicle for a Court to correct an illegal "general sentence." Indeed, in *Benson, supra*, the Court held that a defendant's

-9-

"general sentence" was an "illegal sentence" within the meaning of former Federal Rule of Criminal Procedure 35(a) simply because it was a "general sentence." Accordingly, the *Benson* Court granted the defendant's motion to correct his illegal sentence pursuant to former Rule 35(a) and remanded to the district court for resentencing.

At such a resentencing, Mr. Martorano will show, *inter alia*, that, when he was sentenced in 1984, the U.S. Probation Officer's Parole Guideline Worksheet prepared by the probation officer responsible for Mr. Martorano's PSI provided that Mr. Martorano's parole guidelines dictated a parole guideline of between 40-52 months.[3] *See* Exhibit 5 attached hereto. However, Judge John B. Hannum unexpectedly sentenced Mr. Martorano to life imprisonment without parole although Mr. Martorano accepted responsibility for the offenses he committed, he

---

[3] Under the old sentencing system, the U.S. Probation Office would compute the parole guidelines as part of the sentencing process to provide information to the Court, counsel and the defendant. Ultimately the parole guideline determination would play a critical role in determining the actual release from prison and be subject to the actual sentence imposed by the Court. Generally, a defendant who received a regular adult sentence would have to serve one-third of the sentence before becoming eligible for parole, although a Court could make a defendant immediately eligible for parole. In either case, at the time, the guideline computation system was an effort to provide guidance and some uniformity in both actual sentencing and actual release. See, 18 U.S.C.§4205(a) (eligible after 1/3 of any sentence greater than 1 year, or 10 years of a life sentence or sentence greater than 30 years); 18 U.S.C.§ 4205(b)(2) (immediately eligible for parole).

-10-

was a first time offender, and none of the charges were for violent crimes. Rather than becoming embittered, Mr. Martorano has spent the 27 years that he has been imprisoned as a model prisoner who helps others in extraordinary ways. More specifically, while imprisoned, Mr. Martorano became involved in creative writing as a mental release from the harsh physical reality of prison life. He learned how to write from an inmate who had been a college professor. In 1997, a small publishing house in Canada published one of his novels, *Pain Grows A Platinum Rose*, and Mr. Martorano has written many other manuscripts.

Convinced that a creative outlet could benefit all prisoners, Mr. Martorano petitioned for writing classes inside the prison. Then he became BOP certified to teach them. He now teaches reading and writing classes to inmates. Mr. Martorano has been teaching reading and writing classes since 1992. Thousands of inmates have obtained Adult Continuing Education Certificates as a result of completing Mr. Martorano's classes.

In addition, after hearing inmates' tragic and familiar stories, Mr. Martorano began mentoring first-time offenders entering the penitentiary and, later volunteering for the prison's suicide watch. He has obtained certificates from the BOP pertaining to suicide prevention which he uses to counsel suicidal inmates.

-11-

Mr. Martorano has also obtained certification from the BOP to be a trained mentor for prisoners preparing to reenter society.

Mr. Martorano has written newsletters calling on inmates to avoid violence and educate themselves. He joined Coleman FCI's NAACP Chapter and soon after became the first white member elected to its Executive Board. In short, a radical transformation has occurred in George Martorano which is evident to all who come in contact with him and will also be evident to this Court at a resentencing.

**D.    The Violation Of The Double Jeopardy Clause.**

**(1)    Sentencing Mr. Martorano for a Drug Conspiracy and Supervising a Continuing Criminal Enterprise Violates the Double Jeopardy Clause.**

In *Rutledge v. United States*, 517 U.S. 292 (1996), the Supreme Court held that the crime of conspiracy to distribute drugs in violation of 21 U.S.C. § 846 is a lesser included offense of supervising a continuing criminal enterprise in violation of 21 U.S.C. § 848 and, therefore, a defendant's conviction and concurrent sentences for both of those offenses violates the Double Jeopardy Clause's "presumption against allowing multiple punishments for the same crime...." *Id.* at 303. Accordingly, the *Rutledge* Court concluded that "one of petitioner's convictions, as well as its concurrent sentence, is ***unauthorized punishment*** for a

separate offense and must be vacated." *Rutledge*, 517 U.S. at 307 (quoting *Ball v. United States*, 470 U.S. 856, 864 (1985)(emphasis added).

As previously explained, the Third Circuit in *Ward*, 2010 WL 4230795 *5, noted that a general sentence on multiple counts can be interpreted as imposing concurrent sentences on those counts. The *Ward* Court, relying upon *Rutledge*, *supra*, further noted that a general sentence on multiple convictions does not cure a Double Jeopardy problem. *Ward*, 2010 WL 4230795 *5 n. 8. Thus, Mr. Martorano's general sentence for conspiring to distribute drugs and supervising a continuing criminal enterprise can be interpreted as imposing concurrent sentences for those violations and plainly violates the Double Jeopardy Clause.

When a defendant is convicted and sentenced for a continuing criminal enterprise offense and a lesser-included drug distribution conspiracy offense, the district court has the discretion to decide which conviction and sentence to vacate. *Ball*, 470 U.S. at 861. In *Ball*, the Supreme Court held that possession of a firearm is a lesser included offense of receipt of a firearm. To alleviate the double-punishment problem of being convicted and sentenced for both offenses, the Court remanded the case and explained that it "is for the District Court, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions." *Id.* at 864.

-13-

Courts of Appeal have also recognized that, where a defendant has been convicted and sentenced for continuing criminal enterprise and drug conspiracy offenses, the district court may vacate **either** the conviction and sentence on the continuing criminal enterprise or the conviction and sentence on the conspiracy count. *See e.g., United States v. Hutchinson*, 573 F.3d 1011, 1022 (10th Cir. 2009) ("remand[ing] this matter to the district court with instructions to vacate Mr. Hutchinson's conviction on *either* the drug conspiracy charge or the CCE charge")(emphasis added); *Robinson v. United States*, 196 F.3d 748, 754 (7th Cir. 1999)("remand[ing] to the district court with instructions to vacate [the defendant's] conviction and sentence under *either* the CCE count or the conspiracy count....")(emphasis added).

-14-

**(2)     The Double Jeopardy Violation in this Case has Resulted in an"Illegal Sentence" Within the Meaning of Former Rule 35(a) of the Federal Rules of Criminal Procedure.**

A sentence is illegal within the meaning of former Rule 35 if it is "constitutionally invalid" in any respect. *Hill v. United States*, 368 U.S. 424, 430 (1962). *See also e.g., United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004)(an "illegal sentence" under former Rule 35(a) is "one which is ... in violation of the constitution"). In *United States v. Garmany*, 498 F.Supp.2d 1251 (D. Ariz. 2007), a case that is strikingly similar to Mr. Martorano's case, the Court explained that it had granted the defendant's motion to correct his illegal sentence pursuant to former Federal Rule of Criminal Procedure 35(a) because the defendant's concurrent sentences for a drug conspiracy under Section 846 and a continuing criminal enterprise under Section 848 violated the Double Jeopardy Clause of the Constitution and the holding of *Rutledge, supra.*

Furthermore, a host of other courts have held that a sentence is illegal within the meaning of former Rule 35(a) if it violates the Double Jeopardy Clause of the Constitution. *United States v. Golay*, 560 F.2d 866, 870 (8th Cir. 1977) ("[a] sentence which violates the double jeopardy clause is clearly illegal under Fed.R.Crim.P. 35"); *United States v. Mack*, 494 F.2d 1204 (9th Cir. 1974) ("[t]he proposition is well-settled that a sentence which violates the Double Jeopardy

-15-

Clause is an illegal sentence which can be challenged at any time"); *United States v. Pavlico*, 961 F.2d 440, 443 (4th Cir. 1992)("a Rule 35(a) motion challenging an illegal sentence may be brought... when the sentence imposed...violates the Double Jeopardy Clause"); *United States v. Henderson*, 968 F.2d 1219 (7th Cir. 1992)(ruling that illegal sentences under old Rule 35 "include those violating the Double Jeopardy clause").

Accordingly, sentencing Mr. Martorano for a drug conspiracy and a continuing criminal enterprise in violation of the Double Jeopardy Clause of the Constitution, was an "illegal sentence" within the meaning of former Rule 35(a).

**E.    Mr. Martorano's Motion Under Former Rule 35(a) Of The Federal Rules Of Criminal Procedure Is Not Procedurally Barred.**

Former Rule 35(a) of the Federal Rules of Criminal Procedure is available to individuals whose offenses were committed prior to November 1, 1987. *See e.g., United States v. Landrum*, 93 F.3d 122, 125 (4th Cir. 1996); *United States v. Basey*, 185 Fed. Appx. 344 (5th Cir. 2006). All of the offenses in the Indictment in this case occurred prior to November 1, 1987. Mr. Martorano is therefore entitled to proceed under former Rule 35(a). That rule allows an individual to bring a motion to correct an illegal sentence "at any time."

The United States Supreme Court and other courts have held that successive Rule 35(a) motions are permissible and are not barred by the doctrine of res judicata. *Heflin v. United States*, 358 U.S. 415, 418 n. 7 (1959); *United States v. Sia*, 104 F.3d 348 *2 (1st Cir. 1996)(unpublished); *Ekberg v. United States*, 167 F.2d 380, 384 (1st Cir. 1948); *Gant v. United States*, 308 F.2d 728 (5th Cir. 1962). *See also United States v. Basey*, 185 Fed. Appx. 344 (5th Cir. 2006) (unpublished). As explained by the Court in *Ekberg*, 167 F.2d at 384:

> Since under Rule 35, the sentencing court may correct an illegal sentence 'at any time', even after the term has expired, we think it clear that the court below would have had power to entertain and grant [the defendant's] second motion, notwithstanding its denial of the earlier motion to the same effect, assuming the motion was a meritorious one. If convinced of its previous error, the sentencing court should have continuing power to correct its own illegal sentence.

Even if this were not so, consideration of the issues in this motion would be mandated because, in this Court's prior written Orders herein, this Court has never addressed what has now been squarely recognized by the Third Circuit in *Ward*: a defendant's "general sentence" on multiple counts can be interpreted as imposing concurrent sentences on those counts and such a sentence is "*clearly ... illegal*" where, as in the instant case, the general sentence exceeds the maximum allowable sentence on some of those counts. *See Ward*, 2010 WL 4230795 *5 (emphasis

-17-

added).  We respectfully submit that, notwithstanding this Court's previous rulings, this Court has never addressed *Ward, supra,* or the multiple problems inherent in a "general sentence" as explicated in *Ward.*   Indeed, under *Ward,* a "general sentence" on multiple counts is illegal *even where the sentence as to one of those counts, as here, is within the statutory maximum.*

Furthermore, since this Court did not provide Mr. Martorano with a copy of its June 6, 2009 Order, he was denied the opportunity to timely request reconsideration of it and was also denied his right to appeal from it.  *See e.g., Ekberg v. United States,* 167 F.2d 380, 383 (1st Cir. 1948) (An order denying a motion to correct an illegal sentence under former Rule 35(a) is an appealable order).  Under these circumstances, it would be a manifest injustice to bar Mr. Martorano from obtaining review of the issues raised herein.

## CONCLUSION

For all of the foregoing reasons, Mr. Martorano respectfully requests that this Court grant his motion to correct illegal sentence and/or for reconsideration and/or for appropriate relief, vacate his sentence, and order a resentencing and any such other relief as this court deems appropriate.

Respectfully submitted,
George Martorano
By Counsel
BLACK, SREBNICK, KORNSPAN &
STUMPF, P.A.
201 South Biscayne Boulevard, Suite 1300
Miami, Florida 33131
Telephone: 305/371-6421
Facsimile: 305/358-2006
s/ Roy Black
**ROY BLACK, ESQUIRE**
Florida Bar No. 126088

MARCIA J. SILVERS, P.A.
2937 Southwest 27th Avenue, Suite 101
Miami, Florida 33133
Telephone: 305/774-5144
Facsimile: 305/446-6150
s/ Marcia J. Silvers
**MARCIA J. SILVERS, ESQUIRE**
Florida Bar No. 34245

s/Theodore Simon
**THEODORE SIMON, ESQUIRE**
Local Counsel
1600 Market Street, 14th Floor
Philadelphia, Pennsylvania 19103
Telephone: 215/563-5550
Facsimile: 215/563-8798

-19-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of November 2010 I

~~electronical~~ly filed the foregoing document with the Clerk of the Court ~~using~~

~~CM/ECF.  I also certify that the foregoing document is being served electronically~~

~~this day on all counsel of record.~~ and filed a copy by hand-delivery

at the U.S. attorney's office 615 Chestnut St. Phila. Pa. 19103

s/ Theodore Simon

THEODORE SIMON, ESQUIRE

**FILED**

NOV 2 9 2010

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

-20-

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - | | CRIMINAL NO. 83-00314 |
| UNITED STATES OF AMERICA | : | Violations: |
| v. | : | 21 United States Code §846 (Conspiracy/Heroin - 1 count) |
| GEORGE MARTORANO, aka COWBOY | : | (Conspiracy/Cocaine/Quaaludes/Marihuana - 1 count) |
| MICHAEL YOUNGBLOOD, aka BLOOD | | 21 United States Code §846 |
| KEVIN RANKIN | : | (Attempt to possess and |
| ALBERT LANGELLA, aka SLIPPERY | | distribute quaaludes - 7 counts) |
| PAUL COMBS | : | 21 United States Code §841 |
| GARY HEWITT | | (Possession with intent to |
| ANTHONY CIANFRANI | : | distribute heroin - 1 count) |
| JOHN DUFRESNE | | (Possession and distribution of |
| EDWARD DUFRESNE | : | cocaine - 4 counts) |
| THOMAS DiCICCO | | (Possession with intent to |
| ROBERT DiCICCO | | distribute marihuana - 4 counts) |
| RICHARD GIANGRANTE, aka CHEECH | | 21 United States Code §952 |
| LOUIS CIRRI, aka FAT LOUIE | : | (Importation of marihuana - 3 counts) |
| JOSEPH BONADIES | | 21 United States Code §843 |
| | | (Unlawful use of a communication facility - 8 counts) |
| - - - - - - - - - - - - - - - - - - - - - - - - | | 21 United States Code §848 (Continuing Criminal Enterprise - 1 count) |
| | | 18 United States Code §2 (Aiding and Abetting - 10 counts) |
| | | FILED:   September 19, 1983 |

I N D I C T M E N T

COUNT ONE

THE GRAND JURY CHARGES:

1.   That from on or about the middle of October 1982, up to on or about the date of the Indictment, GEORGE MARTORANO, aka COWBOY, MICHAEL YOUNGBLOOD, aka BLOOD, KEVIN RANKIN, GARY HEWITT, ALBERT LANGELLA aka

SLIPPERY, defendants herein, knowingly and intentionally did unlawfully combine, conspire, confederate, and agree together and with each other, and with other co-conspirators known and unknown to the Grand Jury, to distribute and possess with the intent to distribute heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841.

2. It was part of the conspiracy that defendant GEORGE MARTORANO would and did arrange to purchase large amounts of heroin for distribution in Philadelphia.

3. It was further part of the conspiracy that defendant GEORGE MARTORANO would and did meet with defendant MICHAEL YOUNGBLOOD to determine the quantity of heroin that MICHAEL YOUNGBLOOD could distribute in Philadelphia through his distribution network.

4. It was further part of the conspiracy that defendant GARY HEWITT would assist in the transportation of the heroin.

5. It was further part of the conspiracy that defendant KEVIN RANKIN would and did act as a communicative link between defendant GEORGE MARTORANO and the suppliers of the heroin and would and did confirm the trustworthiness of defendant MICHAEL YOUNGBLOOD to the suppliers of the heroin.

6. It was further part of the conspiracy that defendant GEORGE MARTORANO would and did purchase two kilograms of high purity heroin for $400,000.

7. It was further part of the conspiracy that defendant GEORGE MARTORANO would and did pay $50,000 as "front money" for the two kilograms of heroin, with the balance of $350,000 to be paid within two weeks of receipt of the heroin.

8.   It was further part of the conspiracy that defendant ALBERT LANGELLA, aka SLIPPERY, acting on behalf of defendant GEORGE MARTORANO, would and did take possession of the two kilograms of heroin at Friday's Restaurant in Philadelphia, Pennsylvania.

## OVERT ACTS

In furtherance of the conspiracy and to effect the objects thereof, the defendants and co-conspirators committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1.   On or about November 1, 1982, defendant GEORGE MARTORANO had a meeting at the Bellevue Stratford Hotel in Philadelphia, Pennsylvania.

2.   On or about November 8, 1982, defendant GEORGE MARTORANO had a meeting with defendant MICHAEL YOUNGBLOOD at the Marriott Hotel in Philadelphia, Pennsylvania.

3.   On or about November 8, 1982, defendant MICHAEL YOUNGBLOOD made a telephone call to a prisoner at Holmesburg Prison in Philadelphia, Pennsylvania.

4.   On or about November 13, 1982, defendant KEVIN RANKIN had a meeting at the Franklin Plaza Hotel in Philadelphia, Pennsylvania.

5.   On or about November 17, 1982, defendant KEVIN RANKIN had a telephone conversation in Philadelphia, Pennsylvania.

6.   On or about November 19, 1982, defendant ALBERT LANGELLA, aka SLIPPERY, assisted in the counting of $50,000 at the Franklin Plaza Hotel in Philadelphia, Pennsylvania.

7.   On or about November 24, 1982, defendant ALBERT LANGELLA, aka SLIPPERY, traveled to Friday's Restaurant in Philadelphia, Pennsylvania.

All in violation of Title 21, United States Code, Section 846.

24

COUNT TWO

THE GRAND JURY FURTHER CHARGES:

1. That from on or about January 1981, up to on or about the date of the Indictment, GEORGE MARTORANO, aka COWBOY, MICHAEL YOUNGBLOOD, aka BLOOD, KEVIN RANKIN, ALBERT LANGELLA aka SLIPPERY, PAUL COMBS, GARY HEWITT, ANTHONY CIANFRANI, JOHN DUFRESNE, EDWARD DUFRESNE, THOMAS DiCICCO, ROBERT DiCICCO, RICHARD GIANGRANTE aka CHEECH, LOUIS CIRRI aka FAT LOUIE, JOSEPH BONADIES, defendants herein, knowingly and intentionally did unlawfully combine, conspire, confederate, and agree together and with each other, and with other co-conspirators known and unknown to the Grand Jury, to distribute and possess with the intent to distribute cocaine, a Schedule II narcotic controlled substance, and methaqualone (quaaludes), a Schedule II non-narcotic drug controlled substance, and marihuana, a Schedule I non-narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841.

2. It was part of the conspiracy that defendant GEORGE MARTORANO would and did act as a drug wholesaler in the distribution of large amounts of controlled substances in the Philadelphia area, including cocaine, quaaludes, marihuana, and methamphetamine.

3. It was further part of the conspiracy that defendant GEORGE MARTORANO would and did establish a drug network to receive and distribute the controlled substances in the Philadelphia area.

4. It was further part of the conspiracy that defendant GEORGE MARTORANO would and did operate his drug network in a corporate-like fashion.

5. It was further part of the conspiracy that defendant ANTHONY CIANFRANI was, at times, in charge of the methamphetamine and marijuana segments of the drug operation and would and did keep records of these transactions.

6. It was further part of the conspiracy that defendant JOHN DUFRESNE was, at times, in charge of the cocaine and quaalude segments of the drug operation and would and did keep records of these transactions.

7. It was further part of the conspiracy that defendants ALBERT LANGELLA, aka SLIPPERY, RICHARD CIANGRANTE, aka CHEECH, EDWARD DUFRESNE, LOUIS CIRRI, aka FAT LOUIE, and JOSEPH BONADIES would and did assist defendant GEORGE MARTORANO in the distribution of controlled substances by being part of defendant MARTORANO's "support staff".

8. It was further part of the conspiracy that defendant GEORGE MARTORANO would and did hold weekly meetings with defendants ANTHONY CIANFRANI and JOHN DUFRESNE and other co-conspirators to discuss the previous week's drug sales, payments, and outstanding debts.

9. It was further part of the conspiracy that defendant GEORGE MARTORANO would and did purchase his cocaine from defendant PAUL COMBS and other co-conspirators in Florida for $49,500 to $51,000 per kilogram of cocaine.

10. It was further part of the conspiracy that defendant GEORGE MARTORANO would and did purchase three to five kilograms of cocaine at a time.

11. It was further part of the conspiracy that defendant EDWARD DUFRESNE would and did transport the cocaine from Florida to Philadelphia.

12.   It was further part of the conspiracy that defendant GEORGE MARTORANO would and did have defendant JOHN DUFRESNE and other co-conspirators dilute or "cut" the cocaine, thereby producing additional cocaine for resale.

13.   It was further part of the conspiracy that defendant GEORGE MARTORANO would and did sell the cocaine for $62,000 per kilogram and $1,900 per ounce.

14.   It was further part of the conspiracy that defendant GEORGE MARTORANO would and did sell between four to eight kilograms of cocaine a month.

15.   It was further part of the conspiracy that defendant GEORGE MARTORANO would and did purchase quaaludes from defendant PAUL COMBS in quantities of 100,000 and at prices of $.50 to $.65 a piece.

16.   It was further part of the conspiracy that defendant GEORGE MARTORANO would and did sell quaaludes in Philadelphia for a wholesale price of $1.10 per quaalude "cash" or $1.25 per quaalude "on consignment".

17.   It was further part of the conspiracy that defendant GEORGE MARTORANO would and did sell hundreds of thousands of quaaludes per year.

18.   It was further part of the conspiracy that defendant RICHARD GIANGRANTE, aka CHEECH, would and did collect and maintain custody of MARTORANO's drug money.

19.   It was further part of the conspiracy that defendant GEORGE MARTORANO would and did purchase marihuana in large quantities from marihuana suppliers for resale in the Philadelphia area.

27

20. It was further part of the conspiracy that defendant GEORGE MARTORANO would and did arrange with marihuana growers in Jamaica to directly purchase sinsemilla and commercial grade marihuana.

21. It was further part of the conspiracy that GEORGE MARTORANO would and did pay $30 to $50 a pound for the commercial grade of marihuana in Jamaica.

22. It was further part of the conspiracy that defendant GEORGE MARTORANO would make payoffs to Jamaican law enforcement officials for "protection" of his marihuana dealings.

23. It was further part of the conspiracy that defendant GEORGE MARTORANO would and did purchase airplanes to transport the marihuana from Jamaica to the United States.

24. It was further part of the conspiracy that defendant GEORGE MARTORANO and defendant GARY HEWITT would and did purchase an airstrip in Florida to use for importing the marihuana.

25. It was further part of the conspiracy that defendant GEORGE MARTORANO and defendant KEVIN RANKIN would and did attempt to purchase an airstrip in Pennsylvania to use for importing the marihuana.

26. It was further part of the conspiracy that defendant GARY HEWITT would and did fly the marihuana from Jamaica and smuggle it into the United States in Florida.

27. It was further part of the conspiracy that defendant GEORGE MARTORANO would and did have the marihuana transported in trucks and recreational vehicles from Florida to Philadelphia.

28. It was further part of the conspiracy that defendant GEORGE MARTORANO would and did sell the commercial grade of marihuana in Philadelphia for $320 to $335 a pound.

29.  It was further part of the conspiracy that defendants MICHAEL YOUNGBLOOD, aka BLOOD, THOMAS DiCICCO and ROBERT DiCICCO would and did purchase cocaine, quaaludes, and marihuana from defendant GEORGE MARTORANO for distribution in Philadelphia.

30.  It was further part of the conspiracy that defendant GEORGE MARTORANO would and did use aliases and false identification in the names of George Masters, Ralph Toscano, James Sesso, John Esposito and John Shore and would and did direct his conspirators to use aliases and false identification.

31.  It was further part of the conspiracy that defendant GEORGE MARTORANO would and did "launder" his drug profits through legitimate businesses.

32.  It was further part of the conspiracy that defendant GEORGE MARTORANO would and did invest his drug profits in legitimate businesses and would and did use defendant KEVIN RANKIN, an attorney, as a "front" to purchase the legitimate businesses and conceal and protect MARTORANO's interests in them.

33.  It was further part of the conspiracy that defendant GEORGE MARTORANO would and did further conceal his investment of drug profits in legitimate businesses through false documentation mispresenting that defendant KEVIN RANKIN borrowed funds to invest in the businesses.

34.  It was further part of the conspiracy that defendant KEVIN RANKIN would and did act as a communicative link between defendant GEORGE MARTORANO and his co-conspirators and drug suppliers.

35.  It was further part of the conspiracy that defendant GEORGE MARTORANO would and did attempt to use the appearance of an

27

attorney-client relationship with defendant KEVIN RANKIN to protect the illegal drug operation from detection by law enforcement authorities.

36. It was further part of the conspiracy that defendant KEVIN RANKIN, knowing of the ongoing drug activities of defendant GEORGE MARTORANO, would and did advise defendant MARTORANO how to avoid detection by law enforcement authorities.

37. It was further part of the conspiracy that defendant KEVIN RANKIN, knowing of the ongoing drug activities of defendant MARTORANO, would and did agree to represent MARTORANO's drug employees in the event of arrest in order to protect defendant MARTORANO and prevent anyone from cooperating with law enforcement officials.

## OVERT ACTS

In furtherance of the conspiracy and to affect the objects thereof, the defendants and co-conspirators committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1. On or about July 15, 1982, defendants GEORGE MARTORANO and KEVIN RANKIN had a meeting at the Saloon Restaurant in Philadelphia, Pennsylvania.

2. On or about July 27, 1982, defendants GEORGE MARTORANO, LOUIS CIRRI, aka FAT LOUIE, JOSEPH BONADIES, and KEVIN RANKIN had a meeting at the Bellevue Stratford Hotel in Philadelphia, Pennsylvania.

3. On or about July 28, 1982, defendant RICHARD GIANGRANTE, aka CHEECH, delivered $20,000 to GEORGE MARTORANO at the Wildflowers Restaurant in Philadelphia, Pennsylvania.

4. On or about September 2, 1982, defendants GEORGE MARTORANO and KEVIN RANKIN made a telephone call from Philadelphia to Miami, Florida.

5. On or about September 18, 1982, defendants GEORGE MARTORANO, GARY HEWITT, and ANTHONY CIANFRANI had a meeting at the Marriott Hotel in Philadelphia, Pennsylvania.

6. On or about October 11, 1982, defendant GEORGE MARTORANO and MICHAEL YOUNGBLOOD had a meeting at the Bellevue Stratford Hotel in Philadelphia, Pennsylvania.

7. On or about October 11, 1982, defendant MICHAEL YOUNGBLOOD made a telephone call to a prisoner at the Holmesburg Prison in Philadelphia, Pennsylvania.

8. On or about October 15, 1982, defendant GARY HEWITT imported approximately 840 pounds of marihuana from Jamaica into Florida.

9. On or about November 2, 1982, defendants JOHN DUFRESNE and JOSEPH BONADIES unloaded approximately 870 pounds of marihuana in Bellmawr, New Jersey.

10. On or about November 8, 1982, defendants GEORGE MARTORANO, KEVIN RANKIN, GARY HEWITT, and ALBERT LANGELLA, aka SLIPPERY, had a meeting at the North Philadelphia Airport in Philadelphia, Pennsylvania.

11. On or about November 24, 1982, defendant GEORGE MARTORANO gave defendant JOHN DUFRESNE approximately $49,800 in cash and 50,000 tablets of a controlled substance.

12. On or about January 13, 1983, defendant GARY HEWITT flew a single engine airplane from Florida to Jamaica.

13. On or about February 1, 1983, defendant PAUL COMBS sold approximately 200,000 tablets of a controlled substance in Ft. Lauderdale, Florida.

31

14.  On or about February 5, 1983, defendant THOMAS DiCICCO placed approximately 91,000 tablets of a controlled substance in an automobile at the Franklin Plaza parking lot in Philadelphia, Pennsylvania.

15.  On or about February 6, 1983, defendants GEORGE MARTORANO, THOMAS DiCICCO, ROBERT DiCICCO, ALBERT LANGELLA, aka SLIPPERY, and LOUIS CIRRI, aka FAT LOUIE, had a meeting in Yeadon, Pennsylvania.

16.  On or about March 1, 1983, defendants GEORGE MARTORANO and PAUL COMBS made a telephone call to Miami, Florida.

All in violation of Title 21, United States Code, Section 846.

COUNT THREE

THE GRAND JURY FURTHER CHARGES:

That on or about November 24, 1982, in Philadelphia, in the Eastern District of Pennsylvania,

GEORGE MARTORANO, aka COWBOY
ALBERT LANCELLA, aka SLIPPERY

defendants, knowingly and intentionally did unlawfully possess with the intent to distribute approximately two kilograms of heroin, a Schedule I narcotic drug controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1).

33

COUNT FOUR

THE GRAND JURY FURTHER CHARGES:

That on or about the end of July 1982, in Philadelphia, in the Eastern District of Pennsylvania,

GEORGE MARTORANO, aka COWBOY

defendant, knowingly and intentionally did unlawfully attempt to possess with the intent to distribute approximately 100,000 tablets of methaqualone (quaaludes), a Schedule II non-narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

In violation of Title 21, United States Code, Section 846.

COUNT FIVE

THE GRAND JURY FURTHER CHARGES:

That on or about the end of July 1982, in Philadelphia, in the Eastern District of Pennsylvania,

PAUL COMBS

defendant, knowingly and intentionally did unlawfully attempt to distribute and cause to be distributed approximately 100,000 tablets of methaqualone (quaaludes), a Schedule II non-narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

In violation of Title 21, United States Code, Section 846.

COUNT SIX

THE GRAND JURY FURTHER CHARGES:

That on or about the end of August 1982, in Philadelphia, in the Eastern District of Pennsylvania,

GEORGE MARTORANO, aka CONBOY

defendant, knowingly and intentionally did unlawfully attempt to possess with the intent to distribute approximately 100,000 tablets of methaqualone (quaaludes), a Schedule II non-narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

In violation of Title 21, United States Code, Section 846.

COUNT SEVEN

THE GRAND JURY FURTHER CHARGES:

That on or about the end of August 1982, in Philadelphia, in the Eastern District of Pennsylvania,

PAUL COMBS

defendant, knowingly and intentionally did unlawfully attempt to distribute and cause to be distributed approximately 100,000 tablets of methaqualone (quaaludes), a Schedule II non-narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

In violation of Title 21, United States Code, Section 846.

## COUNT EIGHT

THE GRAND JURY FURTHER CHARGES:

That on or about September 30, 1982, in Philadelphia, in the Eastern District of Pennsylvania,

### ROBERT DiCICCO

defendant, knowingly and intentionally did unlawfully attempt to possess with the intent to distribute approximately 5,000 tablets of methaqualone (quaaludes), a Schedule II non-narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

In violation of Title 21, United States Code, Section 846.

COUNT NINE

THE GRAND JURY FURTHER CHARGES:

That on or about November 24, 1982, in Philadelphia, in the Eastern District of Pennsylvania,

> GEORGE MARTORANO, aka COWBOY
> JOHN DUFRESNE
> JOSEPH BONADIES
> EDWARD DUFRESNE

defendants, knowingly and intentionally did unlawfully attempt to distribute approximately 50,000 tablets of methaqualone (quaaludes), a Schedule II non-narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

In violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

COUNT TEN

THE GRAND JURY FURTHER CHARGES:

That on or about February 5, 1983, in Philadelphia, in the Eastern District of Pennsylvania,

GEORGE MARTORANO, aka COWBOY
RICHARD GIANGRANTE, aka CHEECH
THOMAS DiCICCO

defendants, knowingly and intentionally did unlawfully attempt to distribute approximately 91,000 tablets of methaqualone (quaaludes), a Schedule II non-narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

In violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

COUNT ELEVEN

THE GRAND JURY FURTHER CHARGES:

That on or about the beginning of July 1982, in Philadelphia, in the Eastern District of Pennsylvania,

GEORGE MARTORANO, aka COWBOY
JOHN DUFRESNE

defendants, knowingly and intentionally did unlawfully distribute and cause to be distributed approximately one kilogram of cocaine, a Schedule II narcotic drug controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1).

41

COUNT TWELVE

THE GRAND JURY FURTHER CHARGES:

That on or about the middle of September 1982, in Philadelphia, in the Eastern District of Pennsylvania,

MICHAEL YOUNGBLOOD, aka BLOOD

defendant, knowingly and intentionally did unlawfully possess with the intent to distribute one kilogram of cocaine, a Schedule II narcotic drug controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1).

42.

COUNT THIRTEEN

THE GRAND JURY FURTHER CHARGES:

That on or about the beginning of October 1982, in Philadelphia, in the Eastern District of Pennsylvania,

GEORGE MARTORANO, aka COWBOY
EDWARD DUFRESNE

defendants, knowingly and intentionally did unlawfully possess with the intent to distribute approximately three kilograms of cocaine, a Schedule II narcotic drug controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

43

## COUNT FOURTEEN

THE GRAND JURY FURTHER CHARGES:

That on or about the end of October 1982, in Philadelphia, in the Eastern District of Pennsylvania,

GEORGE MARTORANO, aka COWBOY
EDWARD DUFRESNE

defendants, knowingly and intentionally did unlawfully possess with the intent to distribute approximately five kilograms of cocaine, a Schedule II narcotic drug controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

44

COUNT FIFTEEN

THE GRAND JURY FURTHER CHARGES:

That on or about October 17, 1962, in Philadelphia, in the Eastern District of Pennsylvania,

GEORGE MARTORANO, aka COWBOY
JOHN DUFRESNE

defendants, knowingly and intentionally did unlawfully possess with the intent to distribute approximately 840 pounds of marihuana, a Schedule I non-narcotic drug controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT SIXTEEN

THE GRAND JURY FURTHER CHARGES:

That on or about November 24, 1982, in Philadelphia, in the Eastern District of Pennsylvania,

> GEORGE MARTORANO, aka COWBOY
> JOHN DUFRESNE
> JOSEPH BONADIES
> EDWARD DUFRESNE

defendants, knowingly and intentionally did unlawfully possess with the intent to distribute approximately 1,200 pounds of marihuana, a Schedule I non-narcotic drug controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

COUNT SEVENTEEN

THE GRAND JURY FURTHER CHARGES:

That on or about the first week of January 1983, in Philadelphia, in the Eastern District of Pennsylvania,

GEORGE MARIORANO

defendant, knowingly and intentionally did unlawfully possess with the intent to distribute approximately 800 pounds of marihuana, a Schedule I non-narcotic drug controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1).

47

COUNT EIGHTEEN

THE GRAND JURY FURTHER CHARGES:

That on or about February 6, 1983, in Yeadon, Pennsylvania, in the Eastern District of Pennsylvania,

> GEORGE MARTORANO, aka COWBOY
> THOMAS DiCICCO
> ROBERT DiCICCO
> ALBERT LANGELLA, aka SLIPPERY
> LOUIS CIRRI, aka FAT LOUIE

defendants, knowingly and intentionally did unlawfully possess with the intent to distribute approximately 1,500 pounds of marihuana, a Schedule I non-narcotic drug controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

48

COUNT NINETEEN

THE GRAND JURY FURTHER CHARGES:

That on or about October 15, 1982, in the Eastern District of Pennsylvania,

GEORGE MARIORANO, aka COWBOY
GARY HEWITT

defendants, knowingly and intentionally did import and cause to be imported approximately 840 pounds of marihuana, a Schedule I non-narcotic drug controlled substance, into the United States from Jamaica.

In violation of Title 21, United States Code, Section 952(a) and Title 18, United States Code, Section 2.

COUNT TWENTY

THE GRAND JURY FURTHER CHARGES:

That on or about October 29, 1982, in the Eastern District of Pennsylvania,

GEORGE MARTORANO, aka COWBOY
GARY HEWITT

defendants, knowingly and intentionally did import and cause to be imported approximately 870 pounds of marihuana, a Schedule I non-narcotic drug controlled substance, into the United States from Jamaica.

In violation of Title 21, United States Code, Section 952(a) and Title 18, United States Code, Section 2.

## COUNT TWENTY-ONE

THE GRAND JURY FURTHER CHARGES:

That on or about the first week of January 1983; in the Eastern District of Pennsylvania,

GEORGE MARTORANO, aka COWBOY
GARY HEWITT

defendants, knowingly and intentionally did import and cause to be imported approximately 800 pounds of marihuana, a Schedule I non-narcotic drug controlled substance, into the United States from Jamaica.

In violation of Title 21, United States Code, Section 952(a) and Title 18, United States Code, Section 2.

$57$

## COUNT TWENTY-TWO

THE GRAND JURY FURTHER CHARGES THAT:

1. The allegations of Count One are hereby realleged and incorporated herein by reference.

2. On or about November 8, 1982, at approximately 10:25 p.m., at Philadelphia, in the Eastern District of Pennsylvania,

MICHAEL YOUNGBLOOD, aka BLOOD

defendant, did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the conspiracy described in Count One, in that MICHAEL YOUNGBLOOD spoke with a prisoner at the Holmesburg Prison and discussed the number of kilograms of heroin per month that GEORGE MARTORANO, MICHAEL YOUNGBLOOD, and their associates could distribute in the Philadelphia area.

In violation of Title 21, United States Code, Section 843(b).

## COUNT TWENTY-THREE

THE GRAND JURY FURTHER CHARGES THAT:

1. The allegations of Count One are hereby realleged and incorporated herein by reference.

2. On or about November 8, 1982, at approximately 10:50 p.m., at Philadelphia, in the Eastern District of Pennsylvania,

MICHAEL YOUNGBLOOD, aka BLOOD

defendant, did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the conspiracy described in Count One, in that MICHAEL YOUNGBLOOD spoke with a prisoner at the Holmesburg Prison and discussed the price and purity of heroin that GEORGE MARTORANO, MICHAEL YOUNGBLOOD, and their associates would distribute in the Philadelphia area.

In violation of Title 21, United States Code, Section 843(b).

COUNT TWENTY-FOUR

THE GRAND JURY FURTHER CHARGES:

1.   The allegations of Count Two are hereby realleged and incorporated by reference.

2.   That on or about September 2, 1982, at approximately 11:30 a.m. in Philadelphia, in the Eastern District of Pennsylvania,

GEORGE MARTORANO
KEVIN RANKIN

defendants, knowingly and intentionally did use a communication facility and did aid and abet the use of a communication facility, that is, a telephone, in facilitating the conspiracy described in Count Two, in that GEORGE MARTORANO and KEVIN RANKIN discussed with a third individual drug transactions and arranged to meet in Philadelphia to further discuss these transactions.

In violation of Title 21, United States Code, Section 843(b) and Title 18, United States Code, Section 2.

COUNT TWENTY-FIVE

THE GRAND JURY FURTHER CHARGES THAT:

1. The allegations of Count Two are hereby realleged and incorporated herein by reference.

2. On or about October 12, 1982, at approximately 7:35 a.m., at Philadelphia, in the Eastern District of Pennsylvania,

KEVIN RANKIN

defendant. did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the conspiracy described in Count Two, in that KEVIN RANKIN discussed the preparation of a bogus promissory note of $100,000 to be used to conceal the investment by GEORGE MARTORANO of illegal drug monies in a legitimate business.

In violation of Title 21, United States Code, Section 843(b).

COUNT TWENTY-SIX

THE GRAND JURY FURTHER CHARGES THAT:

1.   The allegations of Count Two are hereby realleged and incorporated herein by reference.

2.   On or about October 13, 1982, at approximately 7:10 a.m., at Philadelphia, in the Eastern District of Pennsylvania,

KEVIN RANKIN

defendant, did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the conspiracy described in Count Two, in that KEVIN RANKIN transmitted instructions from, and received messages for, GEORGE MARTORANO concerning money for the repair of an airplane to be used for smuggling marihuana.

In violation of Title 21, United States Code, Section 843(b).

COUNT TWENTY-SEVEN

THE GRAND JURY FURTHER CHARGES THAT:

1.  The allegations of Count Two are hereby realleged and incorporated herein by reference.

2.  On or about October 26, 1982, at approximately 3:40 p.m., at Philadelphia, in the Eastern District of Pennsylvania,

KEVIN RANKIN

defendant, did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the conspiracy described in Count Two, in that KEVIN RANKIN discussed the preparation of a bogus promissory note of $100,000 to be used to conceal the investment by GEORGE MARTORANO of illegal drug monies in a legitimate business.

In violation of Title 21, United States Code, Section 843(b).

57

## COUNT TWENTY-EIGHT

THE GRAND JURY FURTHER CHARGES THAT:

1.  The allegations of Count One are hereby realleged and incorporated herein by reference.

2.  On or about November 17, 1982, at approximately 6:30 a.m., at Philadelphia, in the Eastern District of Pennsylvania,

### KEVIN RANKIN

defendant, did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the conspiracy described in Count One, in that KEVIN RANKIN transmitted instructions from, and received messages for GEORGE MARTORANO concerning a distribution of heroin.

In violation of Title 21, United States Code, Section 843(b).

COUNT TWENTY-NINE

THE GRAND JURY FURTHER CHARGES THAT:

1.   The allegations of Count One are hereby realleged and incorporated herein by reference.

2.   On or about November 18, 1982, at approximately 7:47 a.m., at Philadelphia, in the Eastern District of Pennsylvania,

KEVIN RANKIN

defendant, did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the conspiracy described in Count One, in that KEVIN RANKIN transmitted instructions from and received messages for GEORGE MARTORANO concerning a distribution of heroin.

In violation of Title 21, United States Code, Section 843(b).

COUNT THIRTY

THE GRAND JURY FURTHER CHARGES:

1. That from on or about January, 1981 and continuing thereafter to and including the date of the Indictment, in the Eastern District of Pennsylvania and elsewhere,

GEORGE MARTORANO, aka COWBOY

defendant herein, did unlawfully, wilfully, and knowingly engage in a continuing criminal enterprise in that:

(a) GEORGE MARTORANO, aka COWBOY, did unlawfully, wilfully and knowingly violate Subchapters I and II of the Drug Abuse Control Act of 1970, which violations, including but not limited to, Counts One through Four, Six, Nine, Ten, Eleven, Thirteen through Twenty-One, and Twenty-Four of this indictment, which are incorporated by reference, were part of a continuing series of violations of said statutes;

(b) GEORGE MARTORANO, aka COWBOY, undertook the series of violations described in paragraph (a) in concert with five or more persons with respect to whom the defendant occupied a position of organizer, supervisor, or manager; and,

(c) GEORGE MARTORANO obtained substantial income and resources from the violations described in paragraphs (a) and (b).

In violation of Title 21, United States Code, Section 848(a)(1).

2. From his engagement in the continuing enterprise, defendant GEORGE MARTORANO, aka COWBOY, obtained substantial profits with which defendant MARTORANO would and did purchase and obtain property, contractual rights, and other interests including but not limited to the Tiddy Wink, Ltd., a restaurant located at 1605 Sansom Street, Philadelphia, Pennsylvania, and a parcel of real property in Hastings,

60

Florida, further identified in O.R. Book 557, pages 74 and 75 of the public records of St. Johns County, Florida, which the United States is entitled to forfeiture pursuant to Title 21, United States Code, Section 848(a)(2).

<div align="center">A TRUE BILL:</div>

FOREPERSON

EDWARD S. G. DENNIS, JR.
United States Attorney
Eastern District of Pennsylvania

6.1

**EXHIBIT 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| GEORGE MARTORANO | : | NO. 83-00314(01) |
| a/k/a "COWBOY" | | |

## JUDGMENT AND COMMITMENT ORDER

AND NOW, this 20th day of September, 1984, in the
presence of the attorney for the Government, Louis R. Pichini,
Esquire, the defendant appeared in person, with his counsel,
Robert F. Simone, Esquire, on this date, having pleaded guilty
and the Court being satisfied that there is a factual basis for
the plea, the defendant has been convicted of the offenses of:
conspiracy to distribute heroin in violation of 21 U.S.C. §846
as charged in Count 1; conspiracy to distribute cocaine, metha-
qualone, and marihuana in violation of 21 U.S.C. §846 as charged
in Count 2; possession of heroin in violation §841(a)(1) as
charged in Count 3; attempted possession with intent to distribute
methaqualone in violation of 21 U.S.C. §846 as charged in Counts
4, 6, 9, and 10; possession with intent to distribute and/or
distribution of cocaine in violation of 21 U.S.C. §841(a)(1) as
charged in Counts 11, 13, and 14; possession with intent to
distribute marihuana in violation of 21 U.S.C. §841(a)(1) as
charged in Counts 15, 16, 17, 18, 19, 20, and 21; unlawful use of
a communication facility in violation of 21 U.S.C. §843(b) as
charged in Count 24; and conducting a continuing criminal enter
prise in violation of 21 U.S.C. §848 as charged in Count 30.

The Court asked whether the defendant had anything to say why judgment should not be pronounced. Because no sufficient cause to the contrary was shown, or appeared to the Court, the Court adjudged the defendant guilty as charged and ORDERED that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for a term of LIFE IMPRISONMENT, without parole.

It is FURTHER ORDERED that the following property shall forfeit to the United States of America:

1. The assets of Tody Wank, Jr., and

2. A parcel of real property in Hastings, Florida, further identified in O.R. Book, pages 74 and 75 of the public records of St. Johns County, Florida.

It is FURTHER ORDERED that the Attorney General or his representative is hereby authorized to seize the property hereby declared forfeit to the United States of America and dispose of it by any lawful means.

It is FURTHER ORDERED that the Clerk deliver a certified copy of this Judgment and Commitment to the United States Marshal or other qualified officer.

**EXHIBIT 3**

AO 245 (Rev. 6/87) Judgment in a Criminal

# United States District Court

FOR THE EASTERN _____ DISTRICT OF PENNSYLVANIA _____

UNITED STATES OF AMERICA

V.

GEORGE MARTORANO, a/k/a COWBOY
FEDERAL PRISONER
Chester County Prison
West Chester, PA 19382

(Name and Address of Defendant)

EASTERN DISTRICT OF
PENNSYLVANIA

**JUDGMENT IN A CRIMINAL CASE**

Case Number:     83-00314-01

Gerald L. Shargel, Esq. & Christine E. Yaris,

Attorney for Defendant

THE DEFENDANT ENTERED A PLEA OF:

[X] guilty  [ ] nolo contendere] as to count(s) 1,2,3,4,6,9,10,11,13,14,15,16,17,18,19,20,21,24,30 and
[ ] not guilty as to count(s) _____ .

THERE WAS A:
[ ] finding  [ ] verdict] of guilty as to count(s) _____ .

THERE WAS A:
[ ] finding  [ ] verdict] of not guilty as to count(s) _____
[ ] judgment of acquittal as to count(s) _____
   The defendant is acquitted and discharged as to this/these count(s).

THE DEFENDANT IS CONVICTED OF THE OFFENSE(S) OF: 18:2 Aiding and Abetting; 21:841(a)(1)
Unlawfully possessing with intent to distribute heroin; 21:841(a)(1)Unlawfully distribute and
cause to be distributed cocaine; 21:841(a)(1)Unlawfully possess with intent to distribute
cocaine; 21:841(a)(1)Unlawfully possess with intent to distribute marihuana; 21:843((b)
Unlawful use of a communication facility; 21:846,841(a)(1)Conspiracy to distribute heroin,
Schedule I narcotic drug controlled substance; 21:846,841(a)(1)Conspiracy to distribute
cocaine and Quaaludes, Schedule II non-narcotic drugs controlled substances and marihuana
Schedule I non-narcotic drug controlled substance.

IT IS THE JUDGMENT OF THIS COURT THAT: On November 6, 1987, the defendant was committed to
the custody of the Attorney General or his authorized representative for a term of life
imprisonment without parole and for a study as described in 18 U.S.C. Section 4205.
   The Court further ORDERED that the following property shall forfeit to the United States
of America:
      1. The assets of Tiddy Wink, LTD., and
      2. A parcel of real property in Hastings, Florida, further identified in
         O.R. Book 557, pages 74 and 75 of the public records of St. Johns County,
         Florida.
   The Court further ORDERED that the Attorney General or his authorized representative is
hereby authorized to seize the property herein declared forfeit to the United States of
America and dispose of it by any lawful means.
   The defendant having been returned to this Court, and the Court having received and con-
sidered the report of such study and the defendant being present with counsel,
   It is hereby ORDERED that the sentence of imprisonment heretofore imposed is AFFIRMED.

                                                                    66

In addition to any conditions of probation imposed above, IT IS ORDERED that the conditions of proba-

 (Reverse)

## CONDITIONS OF PROBATION

Where probation has been ordered the defendant shall:

(1) refrain from violation of any law (federal, state, and local) and get in touch immediately with your probation officer if arrested or questioned by a law-enforcement officer;
(2) associate only with law-abiding persons and maintain reasonable hours;
(3) work regularly at a lawful occupation and support your legal dependents, if any, to the best of your ability. (When out of work notify your probation officer at once, and consult him prior to job changes);
(4) not leave the judicial district without permission of the probation officer;
(5) notify your probation officer immediately of any changes in your place of residence;
(6) follow the probation officer's instructions and report as directed.

The court may change the conditions of probation, reduce or extend the period of probation, and at any time during the probation period or within the maximum probation period of 5 years permitted by law, may issue a warrant and revoke probation for a violation occurring during the probation period.

IT IS FURTHER ORDERED that the defendant shall pay a total special assessment of $ _____
pursuant to Title 18, U.S.C. Section 3013 for count(s) _____ as follows:


IT IS FURTHER ORDERED THAT counts _____ are DISMISSED
on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall pay to the United States attorney for this district any amount imposed as a fine, restitution or special assessment. The defendant shall pay to the clerk of the court any amount imposed as a cost of prosecution. Until all fines, restitution, special assessments and costs are fully paid, the defendant shall immediately notify the United States attorney for this district of any change in name and address.

IT IS FURTHER ORDERED that the clerk of the court deliver a certified copy of this judgment to the United States marshal of this district.

☐ The Court orders commitment to the custody of the Attorney General and recommends:


April 27, 1988
Date of Imposition of Sentence

Signature of Judicial Officer

John B. Hannum, Senior United States District Judge

Name and Title of Judicial Officer

APRIL 27, 1988
Date

A TRUE COPY CERTIFIED TO FROM THE RECORD

DATED: 4-27-88

ATTEST: _____

CLERK UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

**RETURN**

I have executed this Judgment as follows:

_____

_____

_____

Defendant delivered on _____ ____ to _____ _____ at
                              Date

_____ _____ , the institution designated by the Attorney
General, with a certified copy of this Judgment in a Criminal Case.

67

United States Marshal

**EXHIBIT 4**

12973-004

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :     CRIMINAL NO. 83-00314(1)

            v.

GEORGE MARTORANO         :

## ORDER

AND NOW, this 1st day of August, 1988, upon consideration of the Judgment and Commitment Order entered April 27, 1988, in which the Court inadvertently neglected to state that the defendant was convicted of the offenses of 21 U.S.C. §§841(a)(1), 846 - unlawful attempt to possess with intent to distribute quaaludes; 21 U.S.C. §§841(a)(1), 846 - unlawful attempt to distribute quaaludes; 21 U.S.C. §848 - continuing criminal enterprise; and 21 U.S.C. §952(a) - importation of marihuana, it is hereby ORDERED that the Judgment and Commitment Order is AMENDED to include the omitted convictions.

S.J.

ENTERED: 8/2/88

CLERK OF COURT

69

A TRUE COPY CERTIFIED TO FROM THE RECORD

"CENTRAL FILE"

**EXHIBIT 5**

U.S. Department of Justice
United States Parole Commission

U.S. Probation Officer's Parole Guideline Worksheet

Name: __MARTORANO, George__ Docket No.: 84-00514-01 Date: 7/31/84

*[Note: The following is only an estimate of the parole guideline range as the U.S. Parole Commission will compute the actual parole guideline range at the time of the parole hearing.]*

Offense Severity Rating is assessed as Category ___VI___ because _Large Large_
_illicit drug scale_
_subject was manager_

## SALIENT FACTORS

A. PRIOR CONVICTIONS/ADJUDICATIONS *(ADULT OR JUVENILE)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
 None = 3; One = 2; Two or three = 1; Four or more = 0

B. PRIOR COMMITMENT(S) OF MORE THAN THIRTY DAYS *(ADULT OR JUVENILE)* . . . . . . . . . . . . . . . . . . . | 2 |
 None = 2; One or two = 1; Three or more = 0

C. AGE AT CURRENT OFFENSE/PRIOR COMMITMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
 Age at commencement of the current offense:
 26 years of age or more = 2***; 20-25 years of age = 1***;
 19 years of age or less = 0
 *** EXCEPTION: If five or more prior commitments of more than
 thirty days *(adult or juvenile)*, place an "x" here _____
 and score this item = 0

D. RECENT COMMITMENT FREE PERIOD *(THREE YEARS)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
 No prior commitment of more than thirty days *(adult or juvenile)* or
 released to the community from last such commitment at least three years
 prior to the commencement of the current offense = 1; Otherwise = 0

E. PROBATION/PAROLE/CONFINEMENT/ESCAPE STATUS VIOLATOR THIS TIME . . . . . . . . . . . . . . . . . . . . . | 1 |
 Neither on probation, parole, confinement, or escape status at the time
 of the current offense; nor committed as a probation, parole, confinement,
 or escape status violator this time = 1; Otherwise = 0

F. HEROIN/OPIATE DEPENDENCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
 No history of heroin/opiate dependence = 1; Otherwise = 0

TOTAL SCORE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 |

The applicable Guidelines are: (Adult) (Youth/NARA)

Estimated Guideline Range ___40-52___ months.

Particularly Aggravating/Mitigating Factors (Optional): _Conspiracy lasted_
_over two years involved several_
_different drugs, grossed millions_
_of dollars, subject was the leader._

PAROLE FORM F
F13

71

RE:   MARTORANO, Gec
      Docket No.  84-00314-01

## ESTIMATE OF TIME TO BE SERVED
## BY DEFENDANT PURSUANT TO UNITED
## STATES PAROLE BOARD POLICY GUIDELINES

### (CONFIDENTIAL)

The Parole Policy guidelines of the United States Parole Board indicate the customary range of time to be served before release for various combinations of offense (severity) and offender (parole prognosis) characteristics.  The time ranges specified by the guidelines govern cases with good institutional adjustment and program progress.  Parole outside the guideline period occurs though relatively infrequently; the Parole Board may possibly be influenced to grant parole outside the guidelines by your recommendation on A.O. Form 235 attached hereto. The guidelines also apply to sentences under 18 U.S.C. of Section 4205(b)(1) and (b)(2) (1976) and the Youth Corrections and Young Adult Offenders Act (though there are separate guidelines in the latter cases).  The following is the Probation Department's estimate of where this case fits within the guidelines.  However, the Parole Commission may make a different calculation.

ESTIMATED PAROLE RELEASE GUIDELINES:
(CONFIDENTIAL)

|  | ADULT | YCA |
|---|---|---|
| Offense Severity Rating | Category 6 | _____ |
| Estimated Offender Salient Factor Score | 10 | _____ |
| Estimated Parole Release Guideline Period (in months) | 40 to 52 | ____ to ____ |
| Special Rating (Greatest Severity) | Specific Ranges not Given but Greater Than | Specific Ranges not Given but Greater Than |
|  | ____ to ____ | ____ to ____ |

Respectfully submitted,

H. Richard Gooch, Chief
U.S. Probation Officer
by

Donald S. Miller, Senior
U.S. Probation Officer

72