

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA **FILED**

      v.            NOV 3 0 2010     CRIMINAL NO. 83-314-1

                 MICHAEL E. KUNZ, Clerk

GEORGE MARTORANO     By_____ Dep. Clerk

## DEFENDANT'S
## SUPPLEMENT TO HIS MOTION TO CORRECT ILLEGAL SENTENCE
## AND/OR FOR RECONSIDERATION AND/OR APPROPRIATE RELIEF
## AND INCORPORATED MEMORANDUM OF LAW

The Defendant, GEORGE MARTORANO, by and through undersigned

counsel, respectfully files this Supplement to his "Motion to Correct Illegal

Sentence And/Or For Reconsideration And/Or Appropriate Relief and Incorporated

Memorandum of Law" to notify the Court that counsel in the early evening of

November 29, 2010 became aware[1], that on November 24, 2010, the Third Circuit

granted an unopposed motion to publish its opinion in *United States v. Ward*, 2010

WL 4230795[2] (3d Cir. 2010).   (A copy of this Order of the Third Circuit is

attached hereto as Exhibit 1.)   Thus, *Ward*, a case that Mr. Martorano strongly

relies upon, is now precedential.   (A copy of the Third Circuit's precedential

---

[1] As of today, neither Lexis nor Westlaw provides an official citation.

[2] Parenthetically, at page 1 of Mr. Martorano's "Motion to Correct Illegal Sentence And/Or For Reconsideration And/Or For Appropriate Relief And Incorporated Memorandum of Law," there is a typographical error in that the unpublished *Ward* opinion is incorrectly cited as 2010 WL 4230195 (3d Cir. 2010) but the correct citation to that unpublished opinion is 2010 WL 4230795 (3d Cir. 2010).   In any case the published opinion in *Ward* is now found at *United States v. Ward*, ___F.3d___, 2010 WL 4746185 (3d Cir. 2010).

-1-

opinion in *Ward* is attached hereto as Exhibit 2.)  The precedential *Ward* opinion

can presently be found on Westlaw at *United States v. Ward*, ___F.3d___, 2010

WL 4746185 (3d Cir. 2010) and on Lexis at *United States v. Ward*, ___F.3d___,

2010 U.S. App. LEXIS 22441 (3d Cir. Pa. Oct. 27, 2010).

## CONCLUSION

Wherefore, Mr. Martorano respectfully requests that this Court grant his

motion to correct illegal sentence and/or for reconsideration and/or for appropriate

relief, vacate his sentence, and order a resentencing and any such other relief as

this court deems appropriate.

Respectfully submitted,
George Martorano
By Counsel

MARCIA J. SILVERS, P.A.
2937 Southwest 27th Avenue,
Suite 101
Miami, Florida 33133
Telephone:  305/774-5144
Facsimile: 305/446-6150
Miami, Florida 33131

BLACK, SREBNICK, KORNSPAN
& STUMPF, P.A.
201 South Biscayne Boulevard, Suite 1300
Miami, Florida 33131
Telephone: 305/371-6421
Facsimile: 305/358-2006

S/ *Marcia A. Silvers*

S/ *Roy Black*

**MARCIA J. SILVERS, ESQUIRE**
Florida Bar No. 34245

**ROY BLACK, ESQUIRE**
Florida Bar No. 126088

**THEODORE SIMON, ESQUIRE**
Local Counsel
1600 Market Street, 14th Floor
Philadelphia, Pennsylvania 19103
Telephone: 215/563-5550
Facsimile: 215/563-8798

-2-

**EXHIBIT 1**

3

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

November 24, 2010

No. 09-4271

UNITED STATES OF AMERICA

v.

LAWRENCE SCOTT WARD, Appellant

(E.D. Pa. No. 2-08-cr-00148-001)

Present:    SCIRICA, FUENTES and JORDAN, Circuit Judges

Unopposed Motion by Appellant to Publish the Court's Opinion
dated October 27, 2010.

Respectfully,
Clerk/arl

_____ORDER_____

The foregoing Unopposed Motion by Appellant to Publish the Court's Opinion dated
October 27, 2010, is hereby GRANTED.

By the Court,

/s/  Kent A. Jordan
Circuit Judge

Dated:  24 November 2010

**EXHIBIT 2**

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 09-4271

————————

UNITED STATES OF AMERICA

v.

LAWRENCE SCOTT WARD,

Appellant.

————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-08-cr-00148-001)
District Judge: Hon. Petrese B. Tucker

————————

Submitted Under Third Circuit LAR 34.1(a)
October 5, 2010

Before:  SCIRICA, FUENTES and JORDAN, *Circuit
Judges.*

(Filed: October 27, 2010)

————————

Peter Goldberger
50 Rittenhouse Place
Ardmore, PA   19003
    *Counsel for Appellant*

Zane David Memeger
Robert A. Zauzmer
Bea L. Witzleben
Office of United States Attorney
615 Chestnut Street - #1250
Philadelphia, PA   19106
    *Counsel for Appellee*

—————  ————

OPINION OF THE COURT

——————————

JORDAN, *Circuit Judge.*

Lawrence Scott Ward appeals his sentence of twenty-five
years imprisonment and a $100,000 fine imposed by the United
States District Court for the Eastern District of Pennsylvania.
Because the District Court committed a procedural error, we
will vacate and remand for resentencing.

I.    **Background**

Ward, a former professor at the University of
Pennsylvania's Wharton School of Business, pled guilty to two
counts of inducing a minor to engage in sexually explicit
conduct for purposes of producing a visual depiction of that

2

conduct in violation of 18 U.S.C. § 2251(a) (counts one and two); two counts of shipping visual depictions of a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(1) (counts three and four); and one count of making false statements to the United States Department of State to secure a visa in violation of 18 U.S.C. § 1001 (count five).  The charges related to Ward's inducement of J.D., a male teenager located in Brazil, to engage in sexual relations with him, Ward's memorialization of those relations in photographs and DVDs, and Ward's supplying false information to the State Department in an attempt to secure a United States visa for J.D.

Ward maintained a house in Fortaleza, Brazil, where he permitted J.D., J.D.'s mother, and other boys to live.  From January 2006 through August 2006, using his Wharton email account, Ward sent numerous emails to J.D., who was sixteen years old at the time, encouraging him to engage in a "growth program" that included engaging in sex with Ward and other young men chosen by Ward.  Among the young men with whom Ward encouraged J.D. to have sexual relations was R.D., another Brazilian boy, who was seventeen years old; Ward also asked R.D. to have sex with J.D.[1]  Ward promised J.D. that he would "grow" and, in order to persuade J.D. to engage in this program, provided J.D. with gifts, and offered to provide financial support to J.D.'s impoverished mother.

---

[1] J.D. and R.D. appear to have been Ward's favorites among the boys living at his house in Brazil.  (Supp. App. at 344 ("I only want to have sex with you [J.D.] and [R.D.], especially with you because I love you.").)

3

Ward made two trips to Brazil, one in the spring of 2006 and one in the summer of 2006, during which he engaged in sexual conduct with J.D. He took numerous photographs and videos documenting those relations and mailed those depictions to his Wharton office in the United States. Among the photographs of Ward engaged in sexual contact with J.D. were photographs of J.D. engaged in sexual contact with R.D.

Additionally, in July of 2006, Ward took J.D. to a United States Consulate Office in Brazil in attempt to secure a visa for J.D. to visit the United States. A State Department employee interviewed J.D. but denied his application, concluding that, if J.D. were given a visa, he might attempt to remain in the United States. Thereafter, Ward contacted the office and made several misrepresentations in attempt to secure a visa for J.D., including representing that J.D.'s family was "well off" financially, even though he knew the boy to be impoverished, and submitting fictitious financial documents that Ward created in J.D.'s father's name.

When Ward returned to the United States in August 2006, a border search revealed that he was in possession of child pornography. A subsequent investigation revealed that he had previously mailed to his Wharton office a CD containing pictures of himself and J.D. engaged in sexual contact, which were taken in March and April of 2006, and DVDs of himself engaged in sexual contact with J.D., which were taken during June and July of 2006. The investigation also revealed the above-mentioned emails that Ward sent to J.D. and the other boys.

4

After Ward pled guilty to the charges against him, a Presentence Investigation Report ("PSR")[2] was prepared, which calculated an offense level of 38, a criminal history category of I, and a resulting sentencing range of 235-293 months imprisonment.[3] The PSR acknowledged that counts one and two carried a maximum of 30 years imprisonment, per count, with a mandatory minimum of 15 years imprisonment, 18 U.S.C. § 2251; counts three and four carried a maximum of 20 years imprisonment, per count, with a mandatory minimum of 5 years imprisonment, 18 U.S.C. § 2252; and count five carried a maximum 5 year term of imprisonment, 18 U.S.C. § 1001. The PSR also indicated that Ward had the financial capacity to pay a fine within the Guidelines range of $25,000 to $250,000.

The District Court held a sentencing hearing on September 29, 2009. Ward had no objections to the PSR, but the government raised several. One of those objections concerned the lack of a sentencing enhancement to reflect that

---

[2]The initial PSR was revised, and that revised PSR is the operative sentencing document in this case. References to the "PSR" are to the revised PSR.

[3]The PSR grouped all of the counts together under U.S.S.G. § 3D1.2(b) because they involved the same victim and a common plan or scheme. Thus, the most serious offenses – counts one and two, both violations of 18 U.S.C. § 2251(a) – were used to calculate the offense level, which, after application of certain enhancements and adjustments, resulted in an offense level of 38. Whether the counts were properly grouped is not at issue on appeal.

5

10

some of the offenses involved a second victim, R.D.  In support of its objection, the government presented testimony from Richard Stingle, the case agent who investigated the case against Ward.  Stingle testified that Ward, in his emails, had instructed R.D. to "help[] J.D. with his growth program."  (App. at 82). Stingle also testified that Ward had taken pictures of R.D. involved in "sexual contact" with J.D., (App. at 83), that those pictures were interspersed with pictures he had mailed to his office of himself engaged in sexual contact with J.D., and that the pictures were taken close in time to the pictures of Ward with J.D.  Although there were no images of R.D. with Ward, some of Ward's emails had expressed his intentions to have sex with R.D.

The District Court sustained the government's objection to the PSR and added two levels to reflect that Ward's offense involved a second victim.  *See* U.S.S.G. § 2G2.1(d) ("If the offense involved the exploitation of more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the exploitation of each minor had been contained in a separate count of conviction."); *id* § 3D1.4(a).  That enhancement increased the sentencing range to 292 to 365 months.

The Court imposed a sentence of 300 months (25 years) imprisonment, lifetime supervised release, and $500 in special assessments, but did not specify a particular sentence on each count.[4]  In explaining its sentence, the Court stated:

---

[4]The Court indicated that the sentence would be "a concurrent sentence," (App. at 6), which appears to reflect the Court's intention for Ward's sentence to run concurrently with a

6

> Clearly Mr. Ward is a danger to the community
> and protection from his actions is needed.
> Clearly, because of the nature of these horrific
> crimes, ... punishment is appropriate and ... any
> sentence that the court imposes is a sentence that
> must prevent him individually from committing
> further crimes in the future.
>
> ...
>
> The sentence that this Court will impose is a
> sentence that I think takes into consideration all of
> the factors, takes into consideration the history
> and the character of the defendant, and takes into
> consideration all of the arguments that counsel
> has made.

The Court also focused on the fact that the boys Ward targeted
were "perfect victims" because they were poor and vulnerable.
Since Ward was 67 years old at sentencing, his projected release
will not occur until he is 88 years old.

Although the Court initially imposed $100,000 in
restitution, the prosecutor expressed concern about an order of
restitution in this case:

> [T]here is a little wrinkle in the sense that the
> government does not know the whereabouts of
> [J.D.] and normally we would have to proffer

---

sentence imposed in the Eastern District of Virginia based on
conduct related to the present case.

7

> expenses for that victim for counseling and that
> kind of thing.  I don't know that he [J.D.] is
> receiving any counseling.  We have not been able
> to locate him so I don't know if there is a legal
> impediment to the restitution order as opposed to
> a fine, your honor.

The Court responded, "so the $100,000 will be a fine and not
restitution." (App. at 8.)

The Court later entered a judgment of conviction and
sentence reflecting the sentence imposed at the hearing.  As in
the sentencing hearing, the Court did not identify a sentence for
each count, but instead mandated a general sentence on all
counts.  Ward timely appealed.

II.     Discussion[5]

On appeal, Ward alleges that his sentence is procedurally
and substantively unreasonable in several respects.  We follow
a two-step procedure when reviewing such a challenge.  *United
States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc).
First, we address alleged procedural errors, including any error
in calculating the Guidelines range or failing to "adequately
explain the chosen sentence." *Id.* (quoting *Gall v. United States*,
552 U.S. 38, 50 (2007)).  In doing so, we review factual findings
for clear error and exercise *de novo* review over legal rulings.

---

[5]The District Court possessed jurisdiction under 18 U.S.C.
§3231.  We have appellate jurisdiction pursuant to 18 U.S.C.
§3742 and 28 U.S.C. § 1291.

13

*United States v. Brown*, 595 F.3d 498, 526 (3d Cir. 2010).
Second, we address any challenges to the substantive
reasonableness of the sentence under an abuse of discretion
standard, *id.*, taking the "totality of the circumstances" into
consideration. *Tomko*, 562 F.3d at 567. Errors that were not
raised before the District Court are subject to plain error review,
meaning that, in order to prevail on appeal, a defendant must
establish an error that is plain, which affected his substantial
rights, and which, if not rectified, would seriously affect the
fairness, integrity or public reputation of judicial proceedings.
*See United States v. Russell*, 564 F.3d 200, 203-04 (3d Cir.
2009) ("Our standard of review differs based on whether the
alleged sentencing error was raised below. If so, we review for
abuse of discretion; if not, we review for plain error.").

Ward argues that the District Court committed a
procedural error by concluding that his offenses involved a
second victim, thereby increasing his Guidelines range. Section
2G2.1(d)(1) indicates that, "[i]f [an] offense involve[s] the
exploitation of more than one minor," the Guidelines treat the
exploitation of each minor as a separate count. The
enhancement applies when "relevant conduct of an offense of
conviction includes more than one minor being exploited,
whether specifically cited in the count of conviction or not ... ."
U.S.S.G. § 2G2.1 app. note. 5; *see also United States v.
Reinhart*, 357 F.3d 521, 525 (5th Cir. 2004). Relevant conduct
refers to "acts ... that occurred during the commission of the
offense of conviction, in preparation for that offense, or in the

9

14

course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1).[6]

We find no error in the District Court's conclusion that Ward's offenses involved a second victim, R.D. It is clear from Ward's emails that the "growth program" he prepared for J.D., for purposes of inducing him to engage in sexual relations, included having sex with other boys, including R.D. (whom Ward instructed to have sex with J.D.), and that Ward also planned to have sex with R.D. The images of the two boys together – taken in close proximity to the images of Ward with J.D. – provide further evidence that the abuses against both of them were sufficiently interrelated to support a finding that the abuse of R.D. occurred in connection with Ward's abuse of J.D.[7]

_____

[6]The government argues that we need not consider § 1B1.3 because the Guidelines define "offense" as including "all relevant conduct" and Ward's exploitation of R.D. is relevant to his exploitation of J.D. But, the application note upon which the government relies, U.S.S.G. 1B1.1 appl. note 1(H), specifically refers to § 1B1.3 in defining relevant conduct. If the government is making the point that Ward's offense against R.D. need not have been charged in order to be included – which is already clear from § 2G2.1(d) – that does not save us from having to determine whether that offense is relevant to Ward's offenses against J.D. under § 1B1.3.

[7]Ward focuses on the fact that the images are not before our Court and asserts, for the first time on appeal, that we cannot conclude that those images reflect sexually explicit conduct sufficient to establish a violation of 18 U.S.C. § 2251(a). *See* 18

10

15

Accordingly, the District Court correctly applied the enhancement based on the conclusion that Ward's conduct involved multiple victims. *See United States v. Brown*, 579 F.3d 672, 684-85 (6th Cir. 2009) (upholding application of enhancement when defendant took photographs of twin girls, and the photographs suggested that the defendant was "actively photographing both girls").

Ward also alleges, for the first time on appeal, that the District Court committed procedural error by entering a "general sentence" on all counts – which exceeded the mandatory maximum on some of the counts – instead of specifying individual sentences for each offense. Ward contends that such a sentence is illegal and contrary to the Sentencing Guidelines.

Section 5G1.2 of the Sentencing Guidelines indicates that sentencing courts must impose a sentence on each count. *See* U.S.S.G. § 5G1.2(b) (explaining that, except as otherwise required by law, "the sentence imposed on *each other count*

---

U.S.C. § 2256(2)(A) (defining sexually explicit conduct to refer to "(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person."). Although the images are not before the Court, it is clear from testimony at the hearing that the photographs depicted sexual contact between the boys – two minors – and that the images were taken within moments of the images of Ward with J.D.   Based on those facts and, in conjunction with Ward's emails, we reject Ward's argument.

11

*16*

shall be the total punishment" (emphasis added)); *id.* § 5G1.2(c)
("If the sentence imposed on the count carrying the highest
statutory maximum is adequate to achieve the total punishment,
then the sentences *on all counts* shall run concurrently, except
to the extent otherwise required by law." (emphasis added)).
Application Note 1 further clarifies that, in general, "the total
punishment is to be imposed on each count and the sentences on
all counts are to be imposed to run concurrently to the extent
allowed by the statutory maximum sentence of imprisonment for
each count of conviction." Accordingly, the District Court erred
by failing to impose a sentence on each count, and that error is
plain.

Furthermore, the Court's error affected Ward's
substantial rights and resulted in manifest injustice because, as
a result of the general nature of the sentence, neither we nor
Ward can determine whether it was legal as to particular counts.
*Cf. United States v. Pungitore*, 910 F.2d 1084, 1135 (3d Cir.
1990) (explaining that a "general verdict of guilty does not
disclose whether the jury found the defendant guilty of one
crime or of both.   Conceivably, this could prejudice the
defendant in sentencing and in obtaining appellate review."
(quotations omitted)).   We do not know whether the Court
intended to impose a 25 year sentence on each count to run
concurrently – which would clearly be illegal considering the
statutory maximums on certain counts – or whether the Court
had some other sentence in mind, and, accordingly, we cannot
adequately review the sentence. We will therefore remand for

12

resentencing.[8]  *See United States v. Moriarty*, 429 F.3d 1012, 1025 (11th Cir. 2005) ("[T]he district court erred by imposing a general sentence.  We therefore vacate the sentence and remand the case for clarification of the sentence, including the term of supervised release, applicable to each count to which [defendant] pled."); *see also United States v. Hall*, 610 F.3d 727, 745 (D.C. Cir. 2010) (directing the district court, on remand, to specify sentences on individual counts instead of imposing one sentence for all counts of conviction).[9]

---

[8]The cases upon which the government relies, *United States v. Xavier*, 2 F.3d 1281, 1292 (3d Cir. 1993), *United States v. Corson*, 449 F.2d 544, 551 (3d Cir. 1971) (en banc), and *Jones v. Hill*, 71 F.2d 932 (3d Cir. 1934) did not concern the Sentencing Guidelines and are inapposite here.  To the extent those cases can be read as permitting a general sentence on multiple convictions to cure a Double Jeopardy problem, the Supreme Court has since rejected such an approach.  *See Rutledge v. United States*, 517 U.S. 292, 307 (1996) (requiring vacatur of conviction on one of two counts held to constitute "same" offense).  Furthermore, in *Corson* we recognized that we had previously "expressed a dissatisfaction with general sentences and ... declared it 'highly desirable that the trial judge in imposing sentence on an indictment containing more than one count deal separately with each count.'"  449 F.2d at 551 (quoting *United States v. Rose*, 215 F.2d 617, 630 (3d Cir. 1954)).

[9]Because of the general nature of the Court's sentence, we cannot adequately review Ward's remaining arguments – that the Court failed to adequately explain its reasons for "imposing

13

Finally, Ward argues that the Court erred by imposing a fine, instead of restitution, in response to the prosecutor's remarks. Since Ward challenges the imposition of the fine for the first time on appeal, his challenge is subject to plain error review. *See United States v. Pfaff*, — F.3d. —, 2010 WL 3365923, at *1 (2d Cir. Aug. 27, 2010) ("Where a defendant fails to object to a fine below, we review the fine for plain error."). Ward does not contest that he possesses the ability to pay the $100,000 fine. Rather, he contends that the government should not be entitled to money intended for restitution simply because it was unable to calculate the amount owed to the victim, and he requests that we vacate the fine and require the sum to be paid to J.D. or J.D.'s mother.[10]

---

a sentence at a particular point within the [Guidelines] range[,]" as required by 18 U.S.C. § 3553(c)(1), and that his sentence is substantively unreasonable because it exceeds his life expectancy even though Ward was not eligible for a life sentence. We note, however, that simply because the term of imprisonment imposed by the District Court exceeds Ward's life expectancy does not render the sentence unreasonable. *See United States v. Watson*, 482 F.3d 269, 273 (3d Cir. 2007) ("[T]he mere fact that a defendant may not survive beyond his sentence does not provide a basis for a shorter sentence.").

[10]Ward also suggests that imposition of a fine would impermissibly hinder his ability to pay any restitution, which is a curious argument, considering that no restitution was ordered by the Court.

14

Certainly, the Court could have imposed a fine at the outset, as the Guidelines authorized a fine and Ward possessed the ability to pay.  What the Court did, however, was indicate a willingness to grant restitution when, by the prosecutor's own admission, the government lacked evidence of the amount of loss sustained by J.D. *See United States v. Vitillo*, 490 F.3d 314, 330 (3d Cir. 2007) (explaining that restitution is limited to a victim's actual losses, which must be proven by the government by a preponderance of the evidence); *see also* 18 U.S.C. § 3664(e).  Upon learning that fact, the Court simply translated the intended restitution into a fine owed to the government, without engaging in any analysis as to why a fine was appropriate and despite it having appeared, a moment earlier, that no fine would be imposed. *See* 18 U.S.C. § 3572(a) (listing factors to be considered by sentencing court in determining whether to impose a fine and in crafting the amount of fine, including those factors listed in § 3553(a)); *see also United States v. Orlando*, 553 F.3d 1235, 1239 (9th Cir. 2009) ("The district court must consult the Guidelines' recommendation, the § 3553(a) factors, and the 18 U.S.C. § 3572(a) factors to determine the appropriateness of the imposition of a fine and its amount."); U.S.S.G. § 5E1.2.  Imposition of a fine in this manner was error.[11]

---

[11]It is certainly feasible that the District Court initially declined to impose a fine out of concern for the effect on Ward's ability to pay restitution and, upon learning that the government could not account for the amounts owed to J.D., was more comfortable imposing a fine once restitution was no longer an issue.  However, the Court did not explain the reasons for its actions.

We cannot say, however, that the Court's error results in manifest injustice. Ward does not contest that he has the ability to pay the fine, which was within the Guidelines range, and the PSR establishes that he possesses that ability. Indeed, Ward's only complaint on appeal is that he would rather pay the money to J.D. as opposed to the government. That is not a sufficient basis upon which to predicate a finding of plain error.

**III.   Conclusion**

For the above reasons, we will vacate the Court's sentence and remand for resentencing.

16

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3 0 th day of November 2010 I filed the

foregoing document with the Clerk of the Court and served a true and correct

copy on the U.S. Attorney's Office, 615 Chestnut Street, Philadelphia, Pa.

THEODORE SIMON, ESQUIRE

**FILED**

**NOV 3 0 2010**

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

-3-